UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
NANCY STARKEY, as Natural Parent :
and Guardian of her daughter :
SAMANTHA STARKEY, an Infant, :
:
                   Plaintiff, :
: 02 Civ. 2455 (SCR)
     -v.- :
: **OPINION AND ORDER**
:
SOMERS CENTRAL SCHOOL DISTRICT :
AND DR. RICHARD BRODOW, :
:
                  Defendants. :
:
------------------------------------------------------------x

Raymond G. Kruse, P.C., Spring Valley, NY,
for plaintiff.

Lewis R. Silverman and Jennifer H. Pymm, Rutherford
& Christie, LLP, New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiff Nancy Starkey brought this action on behalf of her infant daughter Samantha against defendants Somers Central School District and its Superintendent, Dr. Richard Brodow, seeking damages for alleged violations of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA") and various other statutes, and for alleged violations of Samantha's constitutional rights to, among other things, due process of law, in connection with disciplinary proceedings against Samantha. The Court dismissed seven of the eight claims in the Amended Complaint for failure to state a claim. Starkey v. Somers Central School District, 319 F. Supp.2d 410 (S.D.N.Y. 2004). Following discovery, the Court denied in substantial part defendants' motion for summary judgment on the remaining claim, which alleged substantive

and procedural due process violations in connection with the disciplinary proceedings, and set the case for trial. After jury selection, the case was settled for $20,000, plus legal fees in an amount to be decided by the Court under 42 U.S.C. §1988. Plaintiff now moves for an award of fees. Defendants do not object to the award of fees, but argue that the fee award should be substantially less than that requested by plaintiff. Plaintiff's motion will be granted to the extent set forth below.[1]

## DISCUSSION

Plaintiff seeks a fee award of $118,960. Defendants suggest that an award of $29,707.50 is more appropriate, arguing (1) that time spent on the unsuccessful causes of action should be excluded; (2) that fees should be denied for various allegedly excessive and unreasonable hours included in plaintiff's calculation; (3) that fees should be denied for time spent after an offer of judgment had been made by the defendants; and (4) that the award should be further reduced because of the modest damages ultimately accepted by the plaintiff in the settlement.[2]

### I.   Legal Standards

Under § 1988, fees may be awarded to a "prevailing party" in a civil rights action such as this. Plaintiffs are considered prevailing parties if "they succeed on any significant issue in

---

[1] Due to an extreme backlog in the White Plains Division of this Court, this matter was recently assigned by the Chief Judge to the undersigned judge, solely for purposes of deciding the instant long-pending motion, with the gracious consent of the Honorable Stephen C. Robinson, United States District Judge, to whom this case is otherwise assigned. The case remains assigned to Judge Robinson for all other purposes, with the exception of any motion for reconsideration of this Opinion and Order.

[2] Defendants also dispute plaintiff's arithmetic, arguing that the total fees sought are slightly higher than the number of hours documented. (D. Mem. 3.) However, the mathematical inconsistency resulted from the plaintiff's failure to include one monthly time sheet, which was subsequently supplied. (See P. Reply Mem. 1.)

litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Defendants do not contest that plaintiff is a prevailing party in whose favor fees can be awarded.  In this circuit, courts awarding such fees are required to determine a "presumptively reasonable fee" that is calculated by multiplying the number of hours reasonably spent by the attorney on the case by the hourly rate that "a paying client would be willing to pay" for the attorney's services in the matter.  Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  The fees to be awarded are designed to "approximate" the amount that would be paid in the "free market."  Id. at 184.

Here, except to the extent they argue that some of his time was billed for clerical or administrative tasks that should be billed at a lower rate, defendants do not challenge plaintiff's counsel's claimed hourly rate of $200, which is modest enough for an attorney of counsel's level of experience doing this sort of work in this market.  Rather, they challenge primarily the number of hours for which counsel should be paid.  The case law provides guidance on several fronts in assessing such a challenge.

First, it is well established that "[w]here the plaintiff failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  Hensley, 461 U.S. at 440. "A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories.'"  Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998), quoting Hensley, 461 U.S. at 434.  Deciding whether the successful and unsuccessful claim are

"unrelated," however, is not an exact science.  As the Supreme Court has noted, in many cases "plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims."  Hensley, 461 U.S. at 435.

Second, in assessing "the number of hours *reasonably* expended" on a matter, id. at 433 (emphasis added), the Court must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id. at 434.  In determining the appropriateness of hours expended, the burden is on the party seeking the fee award to document the necessity for the time spent.  "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch, 148 F.3d at 173.

Third, attorneys' fees incurred by a plaintiff after an offer of settlement pursuant to Rule 68, Fed. R. Civ. P., may not be recovered where the plaintiff achieves no better result than was offered.  Marek v. Chesney, 473 U.S. 1 (1985).

Finally, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Hensley, 461 U.S. at 434.  The Supreme Court has repeatedly emphasized this factor:

> "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."  Hensley, supra, 461 U.S. at 436. . . . "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees,

> is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Riverside v. Rivera, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment). Such a comparison promotes the court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." Blanchard v. Bergeron, 489 U.S. 87, 96 (1989).

Farrar v. Hobby, 506 U.S. 103, 114-15 (1992).

With these principles in mind, defendants' various objections may be considered.

## II.   Unsuccessful Claims

Defendants point out that seven of the eight causes of action asserted in the original complaint were dismissed at the pleading stage, and therefore urge that seven-eighths of the time expended by plaintiff's counsel during the period prior to the Court's decision dismissing the complaint should be excluded from the fee calculation. Plaintiff argues that no reduction should be made, because the dismissed claims were "intertwined" with the ultimately successful due process claim. (P. Reply Mem. 2.)

The various claims advanced by plaintiff are based on distinct facts, though they share a common factual background. Plaintiff's daughter Samantha suffered from various disabilities that, plaintiff alleged, entitled her to benefits under IDEA. Nearly thirteen pages of the twenty-one page complaint are devoted to a history of plaintiff's efforts to obtain such benefits, over the years 1995 to 2002. The ultimately successful due process claim, however, focused on a single episode in April 2001, in which Samantha was disciplined in connection with a poem she had written that was perceived by the School District as a threat toward one of her teachers. About three pages of the complaint describe this incident. Thus, the facts giving rise to the due process claim concern a discrete incident, which is factually separate from the lengthy dispute between

5

plaintiff and the School District over the appropriateness of the education offered to Samantha. No doubt, however, some of the factual background regarding Samantha's disabilities, or even the history of her efforts to obtain accommodations for them, is relevant background to the April 2001 episode.

The legal theories on which the claims are based, in contrast, are entirely distinct. The first seven claims, although predicated on various legal theories, were treated by the Court as in essence claims under the IDEA. 319 F. Supp.2d at 411-12. All of these claims related essentially to the defendants' alleged failure to provide Samantha with a free appropriate public education as required by IDEA. The eighth claim was a due process claim that challenged Samantha's suspension on the ground that it was substantively and procedurally inappropriate. Moreover, the claims entailed considerably different levels of damages. The IDEA claims sought damages for the failure, over an extended period, to give Samantha an appropriate education, as well as reimbursement for tuition and related expenses at the new school in which plaintiff had eventually enrolled her as a result of this alleged failure. The damages attendant on the allegedly erroneous suspension could only be rooted in Samantha's loss of two weeks of school.[3]

Not only were the claims legally distinct, but they were litigated and resolved on very different grounds. The bulk of the motion to dismiss was devoted to the defendants' argument that all of the IDEA claims should be dismissed for failure to exhaust administrative remedies. No such requirement applied to the due process claims, which were challenged by the defendants

---

[3] Plaintiff's amended complaint alleged that Samantha was wrongfully prevented from returning to school for a two-week period after her initial five-day suspension had ended. (Am. Compl. ¶ 74.)

on the entirely different ground that no final decision had been made by the School District and the claim was not yet ripe.  Thus, the unsuccessful IDEA claims were ultimately quite distinct from the successful due process claim, being based on different and broader facts, seeking more significant relief, and raising quite different legal issues.

It follows that plaintiff should not be able to recover attorneys' fees for time spent pursuing these claims.  But how should the time be apportioned?  Defendants' argument that seven-eighths of the time should be excluded, because seven out of eight causes of action were dismissed, is plainly facile and unpersuasive.  Claims are easily multiplied, and can often be lumped together for decision; indeed, the Court's decision dismissing the IDEA claims treats all seven dismissed claims as in essence a single claim raising a single legal issue.

A better measure is to look to the amount of effort invested in the respective unsuccessful and successful claims.  As already noted, far more of the complaint is devoted to the facts primarily relating to the IDEA claims than to those pertaining to the suspension, even allowing for some overlap in the background facts that might have been alleged even had no IDEA claims been made.  It was clear to the Court, moreover, that the IDEA claims were at the heart of the dispute:  As Judge Robinson ruled in dismissing these claims, "the core of the Plaintiff's complaint is about (1) a lack of action by the Defendants with respect to Samantha's disability and (2) certain complaints with regard to the impartial hearing and impartial hearing officer. These are both issues that should have been handled through the administrative process, which has been mandated by Congress pursuant to the IDEA."  319 F. Supp.2d at 420.

Moreover, the legal complexity of the claims differed considerably.  Thus, nearly all of Judge Robinson's eleven-page opinion addressing the motion to dismiss is directed to a thorough

and complicated analysis of the IDEA exhaustion requirement.  The arguments addressed to the due process claim occupied a mere paragraph, with a couple of additional paragraphs devoted to a qualified immunity argument advanced by the individual defendant.  Id. at 420-21.  The proportion of space devoted to briefing these issues by the parties is similar.[4]

Finally, the exhaustion requirement on which the IDEA claims foundered is an established and well-known aspect of the IDEA scheme, and on the motion to dismiss the plaintiff conceded, 319 F. Supp.2d at 416-17, as she had to, that she had not exhausted the administrative process.  Any competent lawyer pressing such claims would recognize the exhaustion requirement as a major obstacle to success that would be faced at the outset.  No such inherent obstacle confronted the rather simple due process claim.  It can thus be confidently inferred that a major aspect of legal research in the preparation of the complaint, before as well as after the defendants made their motion, would have been devoted to this issue.

As the Supreme Court recognized in Hensley, for any practical litigator, a plaintiff's various claims for relief will frequently "involve a common core of facts or will be based on related legal theories" that cannot neatly be divided.  461 U.S. at 435.  Claims are often mutually supporting, and one claim, even if legally weak, can lend atmosphere and heft to a superficially separate cause of action.  A pure mathematical test of the number of pages of briefs or paragraphs in a complaint cannot yield a precise answer as to the amount of effort required of a

---

[4] The Argument section of Defendants' Memorandum of Law in support of its Motion To Dismiss consisted of roughly seven pages, of which about six were devoted to the IDEA claim, and only about one to the due process and the qualified immunity issues together.  The Argument section of Plaintiff's Opposition covered eight and one-half pages, of which five were devoted to the IDEA claim, one to qualified immunity, and two and a half to the due process claim.

lawyer in preparing a case, nor is it clear that the effort expended on an unsuccessful claim bears no relation to ultimate success. Nevertheless, it is clear that the "core" of plaintiff's complaint was devoted to the IDEA claims, that those claims were predicated, and ultimately rejected, on the basis of legal theories (and in substantial part on facts) that were distinct from those relating to the successful due process argument. It is thus reasonable to conclude that at least 70% of the effort expended by plaintiff's counsel on the case before the motion to dismiss was granted was related to the completely unsuccessful effort to pursue relief under the IDEA. Since plaintiff seeks fees totaling $33,900, a reduction of $23,730 is, conservatively, required.

**III.    Excessive or Inadequately Documented Time**

Defendants next argue that plaintiff's counsel recorded an excessive number of hours for various tasks, or failed adequately to document his time. Many of defendants' objections, however, relate to the time spent researching and preparing the complaint (see D. Mem, 7-8), time that already has been drastically reduced due to the dismissal of the IDEA claims. Accordingly, no further reductions in time for the period prior to the dismissal of those claims on March 9, 2004, will be made.

However, defendants do document a pattern of excessive billing for a number of tasks after that date. Plaintiff bills for 39.8 hours in responding to defendants' six interrogatories. Considering that plaintiff's answers consisted essentially of a witness list, a brief calculation of damages, a disavowal of any expert testimony, the assertion that documents had already been provided, and a boilerplate collection of objections and cross-references (see Pymm Decl. Ex. C), the time charges are clearly excessive. A total of 10.3 hours are billed for preparing a financial disclosure request, which appears to be a standard form (id. Ex. D). More than 40

hours are attributed to preparing the fee request. Since the fee motion simply reproduces counsel's billing records and provides copies of litigation documents, all of which were presumably easily accessible to counsel, and the memoranda submitted with the motion and in response to defendants' objections are short documents that show little evidence of substantial legal work (for example, the reply brief does not even bother to defend any of the specific entries here discussed, other than to assert conclusorily that "the time expended" on the various tasks was "reasonable," P. Reply Mem. 2), defendants are clearly correct that the time expended is excessive. The Court agrees that the time expended on these tasks should be reduced by approximately 50%, resulting in a total reduction of 45 hours, or $9000.[5]

Additionally, defendants argue that the fee request should be reduced because of what defendants characterize as "[v]ague and [n]on-specific [e]ntries." (D. Mem. 9.) Defendants are correct that courts frequently reduce fee requests because entries are too vague to document the number of hours claims. Kirsch, 148 F.3d at 172; see also Ragin v. Harry Macklowe Real Estate Co., 870 F.Supp. 510, 520 (S.D.N.Y. 1994); Meriwether v. Coughlin, 727 F.Supp. 823, 827 (S.D.N.Y. 1989); Orshan v. Macchiarola, 629 F.Supp. 1014, 1019 (E.D.N.Y. 1986). As defendants point out, counsel on occasion attributed time to such general topics as "legal research," "review of transcripts," client conferences, "work on discovery documents," and the

---

[5] Defendants also argue that certain entries show that counsel charged attorney's rates for what was essentially clerical work. Plaintiff concedes that 2.5 hours attributable to the filing of the complaint was clerical time, and is clearly correct that the remainder of the time spent in preparing it was legal work, which has in any event already been reduced as partially attributable to the unsuccessful IDEA claims. Defendants only identify about 3.7 hours of clerical tasks after the motion to dismiss was decided. As plaintiff concedes that a total of 6.2 hours was billed for clerical tasks (P. Reply Mem. 2), and the Court finds a rate of $100 reasonable for such paralegal tasks, the fee request will be reduced by $620 on this ground.

like, without further specifics. In some instances, such as the 15.9 hours spent in the summer of 2005 on "review of transcripts," the amount of time expended is questionable.

However, this Court is cautious about questioning such entries. Lawyers, and paying clients, differ widely in the degree of billing detail they respectively provide and require. Many of the entries specifically highlighted by defendants are very brief – if lawyers were required to detail the topics covered in client conferences of 6 minutes or less, more time would be spent documenting the work than doing it. Moreover, a review of plaintiff's counsel's billing records shows that such generalized entries, while not rare, are not pervasive. Accordingly, the Court will reduce the charge for transcript review by one-third, or $1060; in other respects, a general reduction of 10% to account for entries that are excessively vague seems sufficient to account for the risk that such entries mask unreasonable expenditures of time.[6]

## IV.   Offer of Judgment

On February 28, 2007, defendants served an offer of judgment of $20,000, exclusive of costs and attorneys' fees. This is exactly the relief plaintiff ultimately obtained in the case.[7] Plaintiff seeks some $17,700 in fees for work performed after this date. Plaintiff makes no response to this argument in her reply brief, and so must be deemed to have conceded the point – as she must, since, as noted above, a Rule 68 offer of judgment cuts off further attorneys' fees if the plaintiff does not succeed in obtaining a more favorable outcome than the offer.

---

[6] The $1060 reduction in the billing for transcript review, along with the other specific reductions granted elsewhere in this opinion, reduces the fee request of $118,960 by a total of $52,110, to $66,850. A further reduction of 10% reduces the fee by $6685.

[7] On April 15, 2004, defendants had offered $20,000, *inclusive* of costs. That offer was clearly inferior to the relief ultimately obtained in the settlement.

11

## V.     Lack of Success

Finally, defendants argue that plaintiff's award should be further cut because of the modest success achieved by plaintiff in the litigation.  It is true, as noted above, that the degree of success achieved was modest.  However, plaintiff did achieve a successful outcome, obtaining a settlement of $20,000 in damages for what plaintiff contends was a denial of her daughter's constitutional rights.  To the extent that the litigation was overblown due to the assertion of unmeritorious claims, the fee award has already been substantially reduced by the amounts attributable to the pursuit of such claims, which ended at the pleading stage.

While the Supreme Court has recognized that "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988," it has simultaneously "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." City of Riverside v. Rivera, 477 U.S. 561, 574 (1986).  This is so because a successful civil rights plaintiff achieves benefits not only for herself, but for the community at large, vindicating important rights and deterring unconstitutional conduct by public officials. Id. at 574-75.  "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.  This is totally inconsistent with Congress'[s] purpose in enacting § 1988." Id. at 578.  Thus, while the Court has been alert to reduce the fee request to account for unnecessary expenditures or the pursuit of claims that lacked merit, a further reduction based solely on the "disproportion" between the amount of the recovery and the fees charged would be inappropriate.

Counsel litigated this case from the filing of the complaint on March 28, 2002, to the settlement at the outset of trial on January 22, 2008. He defended a motion to dismiss, took and provided discovery, successfully defended a summary judgment motion, and prepared for trial. Defendant offered a judgment of $20,000 *including* attorneys' fees in April 2004; nearly 260 hours of plaintiff's counsel's time, for which he billed over $50,000, was incurred in the period between that offer and the later offer of judgment after which the billing clock stopped. Had defendants settled the case in 2004 on the terms offered three years later, the total fees incurred (net of deductions) would have been dramatically less than the amount now awarded. Considering all the facts and circumstances, no further reduction for the modest size of the eventual settlement should be granted.

## CONCLUSION

For the reasons stated above, plaintiff's motion for an award of attorneys' fees pursuant to the settlement agreement is granted, in the amount of $60,165.

SO ORDERED.

Dated: New York, New York
       December 23, 2008

_____
GERARD E. LYNCH
United States District Judge